UNITED STATES of America, Plaintiff,

v.

NORTHERN CALIFORNIA PHARMACEUTICAL ASSOCIATION, Defendant.

No. 39629.

United States District Court
N. D. California, S. D.
Oct. 9, 1964.

Lyle P. Jones, Anti-Trust Division, Department of Justice, San Francisco, Cal., for plaintiff.

James Robert Nielsen, Carmel, Cal., for Kenneth Katz.

SWEIGERT, District Judge.

Petitioner, Kenneth Katz, a member of the defendant Northern California Pharmaceutical Association (hereinafter referred to as Northern), has made a motion for modification and construction of a consent decree entered by this Court on April 9, 1963. The decree was entered after civil prosecution was commenced by the United States under the Sherman Act for conspiracy to establish and maintain uniform consumer prices for prescription drugs in the State of California.

Northern had been previously convicted in a parallel criminal prosecution. That conviction was affirmed, Northern California Pharmaceutical Association v. United States, 306 F.2d 379 (9th Cir. 1962), cert. den. 371 U.S. 862, 83 S.Ct. 119, 9 L.Ed.2d 99.

The decree of April 9, 1963, was directed against defendant Northern, its officers, directors, agents and employees, and also against each of the individual members of Northern. Thus the terms of the decree apply directly to petitioner.

Petitioner has requested construction of and modification of paragraph V of the decree, the terms of which are as follows:

"Each of the members of defendant [Northern], including pharmacists and pharmacy owners who become members of defendant [Northern] after the filing of this judgment, are hereby perpetually enjoined and restrained from directly or indirectly:

"Entering into, adhering to, maintaining or furthering any contract, agreement, or understanding with any other pharmacist or pharmacy owner or group or association of pharmacists or pharmacy owners (1) to fix, determine, maintain or suggest prices, terms or conditions for the sale of prescription drugs, or (2) to formulate, adopt, issue, distribute, recommend or suggest the use by any pharmacist or any other person of any prescription pricing schedule or other list, formula, guide,

schedule or method for pricing prescription drugs, or a professional fee to be charged in connection with the sale of a prescription drug."

Paragraph II of the decree defines "person" as "any individual, firm, partnership, corporation, association, trustee, or any other business or legal entity."

The petitioner states that he is also a member of the California Pharmaceutical Association (hereinafter referred to as Association), which was not involved in the prior actions. The terms of the decree do not apply to its members unless they are also members of Northern.

The petitioner alleges that in his capacity as chairman of the Social-Welfare Committee of the Association he has met with representatives of the Department of Social Welfare, State of California to discuss the administration of the Department's program of furnishing drugs and medicines to public welfare recipients; also that as part of that program, the Department has adopted a schedule of maximum fees and allowances which it will pay to pharmacists for prescriptions furnished to public welfare recipients.

The petitioner alleges that he has refrained from entering into any discussions of that price schedule with representatives of the Department, but that it is impossible to discuss the policies of the Department without recognizing that a Department schedule of maximum allowances exists and that the Department is enforcing compliance with the schedule as part of the program.

Petitioner also alleges that most of the members of defendant Northern are also members of Association, and that some of the members of the Social-Welfare Committee of the Association who have participated in the discussion with the Department of Social Welfare, are also members of Northern.

Petitioner states that he is desirous of furnishing to the Department of Social Welfare "factual data pertaining to costs of drugs" and "information relating to the pharmaceutical profession's reactions to the policies and interpretations of the regulations being administered by the Department of Social Welfare." Petitioner also alleges that he wishes assurance that similar information may be furnished to other departments of the state, as well as federal and local agencies without violation of the terms of the decree.

Petitioner claims to be "unsure" whether such activities are prohibited by the decree and requests modification of the decree specifically to permit them.

Petitioner cites Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464, which was a suit brought by a group of trucking companies and their trade association under the Clayton Act for treble damages and an injunction against a group of railroads, their trade association, and their public relations firm charging conspiracy to monopolize long-haul freight business. The allegations were that the railroads had conducted a secret campaign through their public relations firm to foster anti-truck legislation and to prevent repeal of restrictive legislation.

The Supreme Court reversed a lower court award of an injunction and damages holding that it is not a violation of the Sherman Act merely to attempt to influence the passage or enforcement of laws, and further, that the Sherman Act does not prohibit two or more persons from associating together in an attempt to persuade the legislature or the executive to take particular action with respect to a law even though the result of such action would be to produce a restraint or a monopoly.

The Noerr case makes a distinction between two or more persons associating together in an attempt to persuade the legislature or the executive to take certain action with respect to a law, and, on the other hand, "combinations normally held violative of the Sherman Act [such as] * * * price-fixing agreements, boycotts, market-division agreements, and other similar arrangements." 365 U.S. at 136, 81 S.Ct. at 529.

We need not decide whether a state agency, such as the Department of Social Welfare, is a "person" within the definition and meaning of the present decree.

It is sufficient to say that a decree, even an existing consent decree, should not be unreasonably construed to prohibit conduct of the kind held permissible in the Noerr case and which, therefore, could not have been or should not have been prohibited in the first instance.

■ We may assume, therefore, that petitioner and members of the Association have the right to petition the legislative or executive branches of the State of California, e. g., the Department of Social Welfare, through a representative of their own choosing, with respect to matters in which the Association is interested.

However, if the preparation of such petition or its presentation, or the bases thereof, involves consultation by petitioner with the pharmacist members of the Association or consultation among the members thereof concerning price schedules, i. e., any conduct of the kind clearly prohibited by the existing decree, such conduct of petitioner, or such Association members as are also members of Northern, could not be justified merely upon the ground of the right to petition the state or its agencies.

How petitioner can present "cost and price data" and the "reactions" of members of the Association to state agencies without having previously consulted with those members and without those members, many of whom are members as well of defendant Northern, having consulted among themselves concerning suggested prices is a matter upon which we can only speculate.

As was said in Northern California Pharmaceutical Association v. United States, supra, 306 F.2d at 388, " * * * to the limited extent that it carries on unlawful activity * * * [Northern] is itself a sort of continuing agreement by which the fixing of prices might be effectuated." This kind of activity, i. e., price fixing, was specifically held to be unprotected conduct in the Noerr case.

In light of the criminal case in which the defendant Northern was convicted, and in light of the allegations of the complaint filed in this case, one of the objectives of the consent decree is the prevention of joint consultation on prices by members of Northern either among themselves or with any other pharmacist or group of pharmacists.

This is a petition to modify a consent decree. The Court may, therefore, consider the request for modification in light of United States v. Swift & Co., 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999. In this landmark case, a consent decree had been entered after extensive litigation in a Sherman Act suit against a monopolistic combination of meat packers in 1920. Some ten years later the defendants petitioned for modification of the decree which had, among other things, enjoined defendants from wholesaling and retailing "groceries."

In reversing a lower court modification permitting these activities Justice Cardozo said that "Nothing less than a clear showing of grievous wrong evoked by new and unforeseen conditions should lead us to change what had been decreed after years of litigation with the consent of all concerned." Giving its reasons for refusing to modify the consent decree, the Court stated:

> "The difficulty of ferreting out these evils and repressing them when discovered supplies an additional reason why we should leave the defendants where we find them, especially since the place where we find them is the one where they agreed to be. [286 U.S. 106, 119, 52 S.Ct. 460, 464] * * * Wisely or unwisely, they submitted to these restraints upon the exercise of powers that would normally be theirs. They chose to renounce what they might have otherwise claimed, and the decree of a Court confirmed the renunciation and placed it beyond recall. [Id. at 119, 52 S.Ct. at 464]."

Petitioner here makes no showing of any new or unforeseen conditions nor of any grievous wrong which will be done to him by continuing the terms of the present decree.

WE THEREFORE conclude that there is no showing of sufficient grounds for modification of the existing consent decree.

Although petitioner, as a member of both Northern and the Association and other members of Association who are members of Northern, have the right to associate to petition the legislative or executive branches of the state in respect to their interests, they must do so at their own risk, without involving themselves in activities violative of the express terms of the existing decree.

The petition for modification is therefore denied.